[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff wife against the defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on September 28, 1991 at Southport, CT. There are no children issue of this marriage.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda.
Based upon the evidence, the court makes the following findings. This action was commenced on June 16, 1999. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The defendant graduated from Yale University in 1975 and the University of Virginia School of Law in 1978. He is a member in good standing of the Connecticut Bar. He worked with a prestigious Fairfield County law firm from September, 1978 through November, 1984. Thereafter, he was general counsel of a corporation in New York until June 1990, and upon leaving, he received a substantial severance package. Since 1990, the defendant has been unemployed and has made only minimal efforts to obtain a CT Page 6828 position. From 1990 to 1995, he spent significant time assisting in the care of his seriously ill mother, and in 2001 he suffered from a medical problem, which has required significant time for treatment.
In January 1973, the plaintiff completed a one-year secretarial program at Katherine Gibbs Business School, from 1982 through 1984 completed classes at the Securities Training Institute and received her Series 7 and 63 licenses, now expired, received an Associates Degree, and has earned credits towards her Bachelor of Arts degree at Pace University.
The plaintiff was employed as an insurance clerk, secretary at Cooper's and Lybrand, office manager and bookkeeper, assistant to the president of a corporation, secretary at Bear Sterns, and, recently as corporate executive assistant with compensation in excess of $100,000 per year. The plaintiff voluntarily left her last position in 1999. The plaintiff intends to return to work.
The parties dated from 1988 until their marriage in 1991 and these were the best years of their relationship. Each party had reasons for marriage which were self-centered and self-serving. Counseling assistance was required for disputes and disagreements as to the language of their wedding vows and wedding notices, whether to have a wedding album, and as to who should pay for the costs of the wedding. The primary reason for the breakdown, contrary to the plaintiff's claim, was not the defendant's decision to postpone having children. The defendant told the plaintiff before the wedding that he wanted children, and he did, but, in light of the disputes before the wedding, decided that it would be prudent to delay starting a family until both had a chance to evaluate the stability of their marriage. In light of their premarital difficulties, the plaintiffs threats to move out which began six months after the marriage and her leaving just eight months after the wedding, the defendant's decision to delay cannot be faulted.
It would serve no useful purpose to recount all of the allegations, charges, and evidence as to the cause for the breakdown of this marriage. Both parties bear some responsibility, but for all practical purposes, this marriage was viable, if ever, for no more than its first eight months. The time of a marriage's viability is a proper factor for the court to consider. See Mongillo v. Mongillo, 69 Conn. App. 472,476-477 (2002). Although the parties occasionally continued to see each other for weekends and vacations after May 1992, their relationship was more a dating relationship than that of a married couple.
In 1998, the plaintiff brought suit for divorce in New York. In her complaint, she alleged, contrary to the facts, that the defendant had lived in New York, moved out and abandoned her. This suit was CT Page 6829 discontinued and/or dismissed and, in June 1999, the plaintiff commenced the present action in Connecticut.
At the time of their marriage, the plaintiffs assets were valued at approximately $450,000 to $500,000. At the time of the trial, the value of her assets had increased to approximately $1,900,000. Defendant's assets, prior to the marriage, were worth approximately $1,200,000 to $1,500,000. These included his home in Fairfield, which he purchased in 1980 and for which he made all mortgage, maintenance and repair payments, bank accounts, furniture, and a severance package from Avalon worth some $600,000 to $800,000. The parties have kept their earnings and assets separate, other than a People's account primarily used for receipt of gifts. They have filed separate income tax returns. Neither played any role in the acquisition, preservation, or appreciation of the other's estate and neither has any significant liabilities other than counsel fees related to this litigation.
Neither party has made a claim for alimony. Both agree that the only issues for the court to determine are the equitable division of property and payment of counsel fees. The court has carefully considered all of the evidence and the criteria set forth in General Statutes Section 46b-62
and 46b-81, and applicable case law in reaching the decision reflected in the orders that follow:
 1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
 2. Each party shall keep the assets in their respective names as set forth on their financial affidavits, except that the plaintiff shall be entitled to the proceeds in the joint People's Bank savings account and the defendant shall return to the plaintiff the serpent wedding band.
 3. Each party has sufficient liquid assets, and thus, shall be responsible for their own attorneys fees and costs incurred in connection with this action. See Bornemann v. Bornemann, 245 Conn. 508, 542-545 (1998).
4. Neither party shall receive alimony.
 5. Each of the parties shall be solely reliable and responsible for all liabilities shown on their respective financial affidavits.
 6. Wedding gifts — wedding gifts received by the parties shall be divided equally. In the event there shall be any disputes concerning division of these gifts, the parties shall mediate the issues before CT Page 6830 Family Relations. In the event they are unable to reach agreement, they may return to court for further hearings and orders on this issue. The court will retain jurisdiction over the issue of wedding gifts.
Judgment will enter in accordance with
 ___________________ HILLER, J.